**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **BARBARA J. YOST** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. TMD-08-2942 |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

<u>MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT</u>

Barbara J. Yost  ("Plaintiff" or "claimant") brought this action under 42 U.S.C. § 405(g)

for judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB")

under Title II and of the Social Security Act, 42 U.S.C. §§ 401-433.  Before the Court are

Plaintiff's Motion for Summary Judgment (or Remand) (Paper No. 11), Defendant's Motion for

Summary Judgment. (Paper No. 15) and Plaintiff's Response thereto  (Paper No18).  No hearing

is deemed necessary.  Local Rule 105.6 (D. Md.).  For the reasons presented below, Defendant's

Motion for Summary Judgment is GRANTED.

**I.  Procedural History**

Plaintiff filed her application for DIB on April 27, 2004 alleging disability since October

21, 1998 due to a right hand injury, amputation of part of her right hand, sleep deprivation, pain,

tendinitis, stiffness of her hand and fingers, limited use of her hand, and depression. R. at 71-73,

81-94.  The claim was denied initially and on reconsideration.  R. at 53-55, 63-64.  On October

12, 2006, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a

vocational expert ("VE") testified.  R. at 405-56.  Plaintiff was represented by counsel.  In a

decision dated December 1, 2006, the ALJ denied Plaintiff's request for benefits.  R. at. 17-32.

The Appeals Council denied review on September 8, 2008 making this action ripe for review.  R.

at 7-10.

## II.  ALJ's Decision

The ALJ evaluated Plaintiff's claim for DIB using the sequential process set forth in 20

C.F.R. § 404.1520.  At the first step, the ALJ determined Plaintiff had not engaged in substantial

gainful activity since her alleged onset date.  At step two, the ALJ determined that Plaintiff

suffered from the following severe impairments: right arm neuropathy, right little finger

amputation, and depression.  At step three, the ALJ found that her impairments did not meet or

equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1.  The ALJ

concluded at step four that Plaintiff could not perform her past relevant work given her residual

functional capacity ("RFC").  He concluded as step five that Plaintiff was not disabled because

there were a significant number of jobs available in the economy which she could perform.

Accordingly, he found that Plaintiff was not disabled within the meaning of the Social Security

Act.   R. at 17-32.

## III.  Standard of Review

The role of this court on review is to determine whether substantial evidence supports the

Commissioner's decision and whether the Commissioner applied the correct legal standards.

42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995);

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).   Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence

presented.  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  It is such evidence that a

reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal

to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456 (quoting *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).  This court cannot try the case *de novo* or

resolve evidentiary conflicts, but rather must affirm a decision supported by substantial

evidence.  *Id.*

## IV. Discussion

Plaintiff contends that the ALJ's opinion is not supported by substantial evidence

because (1) the Appeals Council failed to consider new and material evidence; (2) the ALJ

failed to give proper consideration to Plaintiff's depression; (3) the ALJ improperly assessed

Plaintiff's complaints of pain; (4) the RFC was not supported by substantial evidence; and (5)

the ALJ failed to pose a proper hypothetical to the VE.

A.     New and Material Evidence

Plaintiff first contends that the Appeals Council failed to properly consider new and

material evidence.  Specifically, Plaintiff submitted to the Appeals Council an Employability

Assessment from Mark Lieberman, M.A., C.R.C. dated September 30, 2006.  R. at 398-403.

Plaintiff also submitted a letter from treating physician Neil Lattin, M.D. dated September 16,

3

2007 in which Dr. Lattin opined that after a review of Plaintiff's medical records, Plaintiff's

disability predated December 31, 2004.  R. at 404.

　　　20 C.F.R . § 404.970(b) provides that "[t]he Appeals Council shall evaluate the entire

record including the new and material evidence submitted if it relates to the period on or before

the date of the administrative law judge hearing decision.  It will then review the case if it finds

that the administrative law judge's action, findings, or conclusion is contrary to the weight of the

evidence currently of record."  Here, the Appeals Council expressly stated that it "considered . .

. the additional evidence listed on the enclosed Order of Appeals Council" which specifically

included the evidence cited above.  R. at 7-10.  Accordingly, it is implicit, from the Appeals

Council Order, that it must have found the evidence to be "new" and "material"[1] under 20 C.F.R.

§ 404.970.  The Appeals Council, however, did not explain precisely how the evidence was

considered and what weight, if any, it gave to it.  It only stated that the evidence "does not

provide a basis for changing the Administrative Law Judge's decision." R. at 8.  Accordingly, it

denied Plaintiff's request for review making the ALJ's decision the final decision of the

Commissioner.  *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for

review or it may decide to review a case and make a decision. The Appeals Council's decision,

or the decision of the administrative law judge if the request for review is denied, is binding

unless you or another party file an action in Federal district court, or the decision is revised.");

---

[1]As mentioned below, "new" evidence for purposes of 20 C.F.R. § 404.970 is evidence which is not duplicative or cumulative.  *See Wilkins v. Secretary, Dept of Health & Hum. Svs*., 953 F.2d 93, 96 *citing Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir. 1990).  Evidence is "material" under this section if there is a reasonable possibility that the new evidence would have changed the outcome.  *Wilkins*, 953 F.2d at 96 *citing Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985).

*Wilkins*, 953 F.2d at 95-96.

The issue of reviewing the decision of the ALJ in the absence of any explanation from either him or the Appeals Council regarding the weight given to the newly submitted medical evidence is not new to this Court.  This Court addressed this dilemma in *Waters v. Astrue*, No. 06-101PWG (D. Md. July 18, 2007) and *Barton v. Astrue*, No. 06-790PWG, (D. Md. July 18, 2007).  The Court held:

> 'New evidence' is evidence which is not duplicative or cumulative.  Evidence is 'material' if there is a reasonable possibility that it would have changed the outcome.  *Wilkins*, 953 F. 2d at 96.   When the Appeals Council incorporates new evidence into the record, the Court must review the record as a whole including the new evidence. *Id.*   To the extent that my decision in [*Hawker v. Barnhart*, 235 F. Supp.2d 445 (D. Md. 2002)] is read as having departed from the standards for review of new evidence set forth in *Wilkins*, by mandating that a remand must always follow whenever the Appeals Council fails to explain how it evaluated new evidence presented to it, regardless of whether this evidence could have changed the outcome when considered with the evidence produced before the ALJ, it should no longer be followed, as *Wilkins* does not require such an automatic remand, and it is controlling.

*Barton*, Mem. Op. at 4, *Waters*, Mem. Op. at 3.

There is no requirement that the Appeals Council provide an explanation of newly submitted evidence in situations where review is denied.  *See Freeman v. Halter,* 15 Fed. Appx. 87, 2001 WL 847978 (4th Cir. 2001); ("the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding additional evidence insufficient to change the ALJ's decision").  At the same time, it is well-established that this Court must review the entire record , *see Wilkins*, 953 F.2d at 96, and is not permitted to weigh evidence but rather must determine whether substantial evidence supports the Commissioner's decision.  *See  Bryant v. Barnhart*, 04CV17, 2005 WL 1804423 at *5 (W.D. Va. Jan. 21, 2005) ("While the Appeals Council is not required by its regulatory scheme to provide a detailed

statement of reasons regarding late breaking evidence, its failure to deal with such evidence in any fashion meaningful to the district court's substantial evidence review runs the *risk* of a remand to require the Commissioner to explicitly consider the additional evidence *under certain circumstances*.") (emphasis added).

As stated in this Court's prior decision, the

> Court is unwilling to adopt a bright line rule that a remand is required solely because the Appeals Council fails to provide an explanation for its consideration of the additional evidence.  The Court's role continues to be the determination of whether substantial evidence supports the Commissioner's decision; now, in light of the evidence which the ALJ never considered.  Additionally, while evidence considered by the Appeals Council must have been found to be "material", *i.e.* a reasonable possibility that it would have changed the outcome, that alone clearly does not necessitate a finding at the district court level that the case be remanded.  Rather, at this juncture, the Court's role is to determine whether the record, as whole (including that evidence considered by the Appeals Council), supports the Commissioner's findings. *Wilkins*, 953 F.2d at 96.  While the Court notes that under the outline laid out in this opinion, its review includes evidence which was neither considered by the ALJ nor explained in any meaningful fashion by the Appeals Council, it still does not undertake to *weigh* the evidence.

*Yolonda Moore v. Astrue*, No. 05-2952, Aug. 4, 2007.   Accordingly, the Court disagrees with Plaintiff's position that a failure of the Appeals Council to explain the weight or effect afforded to new evidence *mandates* a remand.  The Court, in reviewing the record as a whole, must determine if the new evidence calls into doubt the decision of the ALJ.  Here, the Court finds that it does not.

First, the Employability Assessment was, in fact, not new evidence as it was already part of the record before the ALJ.  *See* R. at 134-39.  Accordingly, the report is simply duplicative.  In any event, the Court does not find that the report would have changed the outcome.  The ALJ relied on the testimony of the independent vocational expert at the hearing who opined that there are jobs claimant is capable of performing.  R. at 31.  As discussed below, the Court finds

6

that the hypothetical upon which the VE based his opinion was supported by the RFC ultimately found by the ALJ which, in turn, the Court finds is supported by substantial evidence. Additionally, the Employability Assessment is a non-medical opinion which was apparently not based on any personal observation of the claimant. *See* SSR 06-03p (noting that opinions of non-medical sources may be valuable when based on personal contact with the individual).

Next, the Court also does not find that there is a reasonable probability that the letter from Dr. Lattin would have changed the outcome. Indeed, the ALJ specifically found that the opinions of Dr. Lattin were not entitled to significant weight because they were (1) unaccompanied by a thorough written report; (2) conflicted with substantial evidence in the record; (3) and did not adequately consider the entire record including statements of collateral sources and findings of other physicians. R. at 27-28. While Dr. Lattin now provides an opinion based on a review of the medical record, the letter in question presents no new medical facts or medical examination. In short, he provides nothing more than an overall opinion that claimant is disabled prior to the date of last insured. This opinion, however, is reserved for the Commissioner. 20 C.F.R. 404.1527(e).

B.    Depression

The ALJ found that although Plaintiff suffers from depression, she does not meet Listing 12.04 because she fails to meet the criteria in parts "B" or "C" of the Listing. With respect to the "B" criteria, Plaintiff must suffer from at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and/or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpt. P, Appendix 1, §12.04 .

The ALJ found that Plaintiff had only mild restrictions in activities of daily living and social functioning, moderate impairment in her ability to concentrate, and no episodes of decompensation.[2]  R. at 24-25.

In support of his finding that Plaintiff had only mild restrictions in her activities of daily living, the ALJ relied on her report dated May 20 ,2004 in which she indicated she was able to drive, cook meals, perform light cleaning, dust, do laundry, ride a tractor, shop, sign checks, read and watch television.  R. at 24 *citing* R. at 103-05.  On December 27, 2000, Dr. Malhotra reported that she is able to do her activities of daily living and drive a car.  R. at 183, and on June 8, 2005, Dr. Rosenbaum reported that Plaintiff reads, attends to her own hygiene and laundry, folds clothes, does laundry, goes shopping, pays bills and uses the computer.  R. at 264-66.   All of this evidence supports the ALJ's finding that Plaintiff had only a mild restriction in activities of daily living.  *See* 20 C.F.R. Part 404, Subpt. P, Appendix 1, §12.00C.1 (activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories and using a post office).

Social functioning refers to the capacity to interact independently, appropriately, effectively and on a sustained basis  with other individuals.  *See* 20 C.F.R. Part 404, Subpt. P, Appendix 1, §12.00C.2.  With respect to activities of social functioning, the ALJ also found that Plaintiff had only a mild restriction.  In support of this finding, he noted Plaintiff is married, spends time with relatives and siblings, talks to relatives on the phone and has a friend in her development. R. at 24-25 *citing* R. at 105-06, 266.  The ALJ also credited the opinion of state

---

[2] The "C" criteria of Listing 12.04 are discussed below.

agency medical consultants Dr. Hales and Dr. Payne who opined Plaintiff was able to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and could work in coordination or proximity to others without being distracted by them.  R. at 29-30, 203-205, 268-70.   Plaintiff points to the opinion of Dr. Noonberg, an independent psychologist, who opined that claimant's depression interferes with her social functioning.  However, even Dr. Noonberg concluded that claimant experienced only a moderate (not marked) limitation in social functioning.  He found her not significantly limited in her ability to interact appropriately with the general public and only moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  R. at 357.  He further found no evidence of limitation in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  *Id*.  The  Court finds that the ALJ's finding regarding Plaintiff's social functioning is supported by substantial evidence.

The ALJ further found that claimant has only a moderate impairment in her ability to concentrate.  He noted that her cognitive ability and memory are intact.  He found that the medical reports indicated that she functions at a higher level that would allow her to do basic work activity.  He also noted that she went into great detail in answering her daily activities questionnaire and disability report which evidenced an ability to maintain an acceptable level of concentration.  R. at 25.   While the record does indicate Plaintiff had poor concentration. *See e.g.*, R. at 264, that does not mandate a finding of marked restriction in concentration, persistence or pace.  Even Dr. Noonberg, upon which Plaintiff relies, found that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance and be punctual within customary

9

tolerances, to sustain an ordinary routine without special supervision and to make simple work-related decisions.  R. at 356.  He found no "marked" limitation in the relevant areas.

While Dr. Noonberg concluded that Plaintiff satisfied Listing 12.04.[3] , as discussed above, he did not find that Plaintiff satisfied the "B" criteria of the Listing  R. at 335-59. Rather, Dr. Noonberg found that Plaintiff satisfies the "C"  criteria because she had a medically documented history of chronic organic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activity with symptoms or signs currently attenuated by medication or psychosocial support and repeated episodes of decompensation, each of extended duration.  R. at 345.  Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace.  20 C.F.R. Part 404, Subpt. P, Appendix 1, § 12.00C.4.  The ALJ specifically found there were no extended episodes of decompensation.  R. at 25

In evaluating the Dr. Noonberg's opinion, the ALJ afforded it little weight. Significantly, he found that Dr. Noonberg's opinion that Plaintiff suffered from extreme mental

---

[3] While Plaintiff notes that Dr. Noonberg also opined that Plaintiff met Listing 12.06-anxiety disorder-, nowhere does Plaintiff make such an argument and the evidence clearly does not support such a finding.  First, the "B" requirements of Listing 12.06 are the same as 12.04; and therefore, for the reasons discussed above, the claimant does not meet the Listing.  Additionally, there is no evidence that claimant is completely unable to function independently outside of her home as required by part "C" of the Listing.  Finally, there is no evidence that Plaintiff meets part "A" of the Listing which requires claimant to meet at least one of the following: "Generalized persistent anxiety accompanied by three out of four of the flowing signs or symptoms: (a) Motor tension; or (b) Autonomic hyperactivity; or (c) Apprehensive expectation; or (d) Vigilance or scanning; or (2) " A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity or situation; or (3) Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or (4) Recurrent obsessions or compulsions which are a source of marked distress; or (5) Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A).

limitations was not supported by objective medical evidence and were not supported by his own recorded observations. R. at 27. The ALJ also noted that the opinion was rendered after the date of Plaintiff's last insured of December 31, 2004. While Dr. Noonberg later indicated that his opinion was relevant during the time period in question, R. at 387, it is nonetheless a factor to be considered in the weight it is afforded.

Based on the above discussion, the Court finds that the ALJ's finding that Plaintiff does not meet Listing 12.04 is supported by substantial evidence. The Court is mindful of the evidence of Plaintiff's mental impairment that is in the record. However, in applying that evidence to the specific criteria under the Listing, the Court does not find that the ALJ committed error with respect to his findings regarding Plaintiff's depression.[4]

C.      RFC and Pain Analysis

Plaintiff contends that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to properly analyze Plaintiff's complaints of pain. As a result, Plaintiff contends the ALJ's determination that she retained the residual functional capacity to perform a significant range of light work is flawed. The Court finds Plaintiff's argument to be without merit.[4]

When a claimant alleges disability due, in part, to pain or other symptoms the ALJ must apply the Commissioner's regulations, 20 C.F.R. §§ 404.1529, 416.929, which establishes a two-step process for evaluating whether a person is disabled by pain or other symptoms, *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). At the first step, the ALJ must determine that the

---

[4] Plaintiff again argues that the ALJ's analysis of Plaintiff's depression is flawed and that as a result, the ALJ erred in finding Plaintiff able to work on a sustained basis. As discussed above, the Court finds that the ALJ's findings regarding Plaintiff's depression supported by substantial evidence. The ALJ restricted Plaintiff to simple, routine, unskilled, low stress work that requires only low concentration and memory. R. at 25.

objective medical evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual symptoms alleged.  *Id*.  At the second step, the ALJ evaluates the extent to which these symptoms limit the claimant's capacity to work.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Craig*, 76 F.3d at 595.  The ALJ must consider all of the available evidence including the claimant's medical history, medical signs, statements by the claimant and his treating physicians,  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1), objective medical evidence, 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), and any information proffered by the claimant, such as the claimant's daily living activities, an account of what aggravates the symptoms, and a summary of how the symptoms affect daily living.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), *Craig*, 76 F.3d at 595.  *See also* R. at 25 (ALJ decision summarizing standard applied in assessing complaints of pain).

The ALJ conducted a thorough review of the medical evidence in the record.  At the first step of the pain analysis, the ALJ found that Plaintiff had medically determinable impairments that could reasonably have been expected to produce the alleged symptoms.  R. at 25. However, he further found that her statements regarding the intensity, persistence and limiting effects of the symptoms were not entirely credible in light of the medical evidence in the record. *Id*.  In support of this finding, the ALJ cited an abundance of medical evidence from the record including examinations at which time Plaintiff had no chronic pain behaviors, no swelling or erythmea, normal range of motion in all joints except right wrist and hand, R. at 26, 253.  He also noted medical evidence which indicated that during examination , claimant was alert and oriented in all spheres, had no delusions, her immediate and short term memory was intact as

12

well as her concentration.  R. at 26, 199.[5]  The ALJ also noted that Plaintiff had never been

hospitalized for her impairment and had generally received only conservative routine

maintenance since her original surgeries from her accident.  R. at 26.   He also noted that the

record did not evidence any significant increase or change in the prescribed medication that

would indicate a worsening or lack of control of her condition.  *Id.*  In addition, Plaintiff

reported a wide range of daily activities which also did not support the extent of pain alleged.

As discussed above, Plaintiff reported being able to drive, cook meals, perform light cleaning,

dust, do laundry, ride a tractor, shop, sign checks, read and watch television.  R. at 24 *citing* R.

at 103-05.

Plaintiff cites to other evidence of pain in the record which she asserts supports a finding

that Plaintiff is not capable of the range of light work found by the ALJ. She argues that the ALJ

"cherry picked" the evidence upon which he based his finding regarding claimant's pain.   For

example, Plaintiff points to the treatment notes of Dr. Malhotra dated December 27, 2000.

While the ALJ noted that Dr. Malhotra found no "chronic pain behaviors" as mentioned above,

Plaintiff notes that Dr. Malhotra also noted: chronic pain in the right hand and right wrist and

that "her pain level varies from mild to moderate."  R. at 184.  Plaintiff also notes that Dr.

Malhotra increased her pain medication of Neurotin and prescribed Vioxx.  *Id*.  In addition,

treatment notes from Union Medical Clinic prior to the date of Plaintiff's last insured do note

chronic  right hand pain, R. at 234 (3/31/04), 235 (10/20/03) , 243 (4/2/02).  While the Court

acknowledges other evidence of pain in the record, the Court also finds that the ALJ's *overall*

discussion of the evidence including the evidence of pain demonstrates support for his finding

---

[5] Contrary to Plaintiff's assertion, the ALJ did clearly consider the opinion of Dr. Lattin but afforded it little weight
based on the reasoning discussed above.

that although Plaintiff indeed experienced pain, she did not experience disabling pain.

D.    Hypothetical

Finally, Plaintiff argues that the hypothetical to the VE was faulty because it failed to include the alleged effects of Plaintiff's medications.  Specifically, Plaintiff asserts that the hypothetical should have included information that Plaintiff would be drowsy throughout any given day.  A hypothetical must fairly set out all of claimant's impairments and must accurately reflect claimant's limitations.  *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *France v. Apfel*, 87 F.upp.2d 484, 490 (Md. 2000) (internal quotation marks and citation omitted).  The hypothetical accurately reflects the limitations in the RFC.  While Plaintiff complained of drowsiness, the ALJ found that the evidence supported   a limitation to work that requires only low concentration and memory.  Indeed, Plaintiff's activities of daily living are also inconsistent with the assertion that Plaintiff's fatigue makes her unable to complete a workday.  *See also* R. at 367 (progress notes dated October 13, 1999 indicating Plaintiff has a "wonderful time" at cousins over a weekend) ; R. at 372 (progress notes dated August 11, 1999 indicating Plaintiff feels better when she keeps busy) Plaintiff's conclusory assertion that the medication Plaintiff takes simply makes her unable to work on a sustained basis simply has no basis in the record.

## V.  Conclusion

For the reasons discussed above, the Court grants the Defendant's Motion for Summary Judgment.  A separate order shall issue.


_____/s/_____
Thomas M. DiGirolamo
January 19, 2010              United States Magistrate Judge

14

Copies to:
Frederick A. Raab, Esq.
Mignini & Raab, LLP
606 Baltimore Ave., Suite 100
Towson, MD 21204

Charlene Bellinger-Honig
Special Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692